IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO.  3:25-CR-222-S |
| v. | |
| ABDUL HADI MURSHID (01)<br>MUHAMMAD SALMAN NAISR (02) | |

**GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTIONS TO MODIFY CONDITIONS OF RELEASE**

RYAN RAYBOULD
UNITED STATES ATTORNEY

*s/ Edward L. Hocter*
EDWARD HOCTER
Assistant United States Attorney
Texas Bar No. 24121668

JONGWOO CHUNG
Assistant United States Attorney
North Carolina Bar No. 52070

NICOLE DANA
Assistant United States Attorney
Texas State Bar No. 24062268

1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone: (214) 659-8600
Facsimile: (214) 659-8812
Emails: ted.hocter@usdoj.gov;
jongwoo.chung@usdoj.gov;
nicole.dana@usdoj.gov

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     BACKGROUND ...................................................................................2

        A.  The Charged Conduct ........................................................2

        B.  Defendants' Characteristics and Foreign Ties ..................................3

        C.  Conditions of Release and Prior Modification ..................................4

III.    LEGAL STANDARD ........................................................................4

IV.     ARGUMENT ....................................................................................6

        A.      Home Detention Remains Necessary to Reasonably Assure
                Community Safety and Appearance................................................6

        B.      Defendants' Curfew Proposal Improperly Conflates Distinct
                Supervision Regimes...................................................................8

        C.      Compliance Does Not Constitute a Material Change in
                Circumstances .............................................................................9

        D.      Employment and Family Considerations Do Not Justify
                Modification ..............................................................................10

V.      CONCLUSION ................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Conley*,
No. 21-CR-064-JFH, 2023 WL 4932089, at *4-5 (N.D.Okla. Aug. 2, 2023) ....... 2, 6, 11

*United States v. Dokku*,
3:18-CR-341-S (1), 2020 WL 2065633, at *6 (N.D.Tex. Apr. 28, 2020) ................... 3, 7

*United States v. Exposito*,
No. CR 4:23-63-ALM-KPJ-1, 2023 WL 2859113 (E.D. Tex. Apr. 10, 2023) ........... 2, 6

*United States v. Ladd*,
No. 3:18-CR-100-L, 2019 WL 1099068 (N.D. Tex 2019) .......................................... 5, 9

*United States v. Muhammad*,
No. 1:25-CR-284 (RDA), 2025 WL 3553204 (E.D. Va. Dec. 11, 2025) .................... 2, 6

*United States v. Phua*,
No. 2:14-cr-00249-APG-PAL, 2015 WL 127715 (D. Nev. Jan. 8, 2015) ...................... 9

*United States v. Villasenor*,
No. 22-CR-342, 2023 WL 4109696 (N.D. Tex. June 21, 2023) ................................. 5, 9

**Statutes**

18 U.S.C. § 3142(c)(1)(B) ................................................................................................. 9

18 U.S.C. § 3142(g)(3)(A) ................................................................................................. 3

18 U.S.C. §§ 3142(c) .................................................................................................... 6, 11

## I.    INTRODUCTION

Defendants Abdul Hadi Murshid and Muhammad Salman Nasir (collectively "defendants") have moved the Court to modify the conditions of their pretrial release, requesting that the Court replace home detention with a less restrictive curfew-based supervision regime.  Dkt. Nos. 80 & 82.  In support of their motions, defendants contend that that they have complied with the current terms, and that continued home detention is unnecessary in light of their employment considerations, family responsibilities, and the passage of time since the Court last modified their conditions.  *Id.*

The government opposes defendants' requests.  Defendants have not identified any new information that alters the Court's previous determination that home detention is necessary to reasonably assure their appearance and the safety of the community.  *Id.* Their motions do not point to any changed circumstance bearing on the risks the Court previously identified, nor do they demonstrate that a curfew-based regime would adequately address those risks.  *Id.*  Instead, defendants ask the Court, seemingly in equity, to re-visit and relax conditions already calibrated under the Bail Reform Act based on assertions of compliance and perceived equivalence between different supervision regimes.  *Id.*

Compliance with court-ordered conditions is expected, not exceptional, and does not warrant expanded liberty absent a material change in circumstances.  Nor do defendants' arguments address the core reasons the Court imposed home detention in the first instance, including the nature of the charged conduct, the risk of continued economic harm, and the defendants' incentive and means to flee.  The government requests,

respectfully, that the Court deny defendants' motions and maintain the existing conditions of release.

## II.    BACKGROUND

### A.    The Charged Conduct

Defendants are charged by indictment with serious federal offenses arising from an alleged large-scale immigration-fraud and money-laundering scheme. Dkt. No. 1. As alleged, the scheme operated over an extended period and involved multiple coordinated steps, including recruiting foreign nationals seeking lawful immigration status, fabricating or misrepresenting employment relationships to support visa petitions, submitting false statements and documentation to federal agencies, coordinating among multiple participants to create the appearance of legitimacy, and moving and laundering proceeds generated by fraudulent applications. *Id.*

The alleged conduct is not isolated or opportunistic. It is organized, document-driven, and communications-intensive. Courts across the country recognize that such fraud schemes pose a risk of ongoing economic danger to the community, even in the absence of physical violence, and that the nature of the offense is a central consideration under the Bail Reform Act. *See, e.g.*, *United States v. Muhammad*, No. 1:25-CR-284 (RDA), 2025 WL 3553204, at *4 (E.D. Va. Dec. 11, 2025)(collecting cases); *United States v. Conley*, No. 21-CR-064-JFH, 2023 WL 4932089, at *4-*5 (N.D. Okla. Aug. 2, 2023); *United States v. Exposito*, No. CR 4:23-63-ALM-KPJ-1, 2023 WL 2859113, at *8 (E.D. Tex. Apr. 10, 2023).

Furthermore, the weight of the evidence against the defendants is substantial. 18 U.S.C. § 3142(g)(2). The government's proof at the detention hearing included reports of statements from multiple cooperating beneficiaries who obtained immigration benefits through the scheme, statements and records from employers who sponsored visas for non-existent or misrepresented positions; records of the defendants' own statements to third parties describing the mechanics of the scheme; as well as corroborating business, bank, and government records. Dkt. No. 37. If convicted of the charged offenses, defendants face the possibility of decades of incarceration followed by rescission of status and deportation, exposure that underscores the strength of the case and the defendants' incentives to evade supervision.

B.      **Defendants' Characteristics and Foreign Ties**

Both defendants are Pakistani nationals. At the detention hearing, the Court received evidence that the defendants maintain significant ties and connections abroad, including relationships with individuals located in Pakistan. The Court further heard evidence indicating that the defendants have access to financial resources outside the United States. In addition, testimony presented at the detention hearing showed that, in connection with the charged conduct, the defendants facilitated others leaving the United States, thereby placing those individuals beyond U.S. jurisdiction.

These facts are relevant to the Court's assessment of flight risk and are considered, properly, under 18 U.S.C. § 3142(g)(3)(A), which directs the Court to evaluate family ties, financial resources, and community ties. *See United States v. Dokku*, No. 3:18-CR-341-S (1), 2020 WL 2065633, at *6 (N.D. Tex. Apr. 28, 2020)(Horan, M.J.)(finding

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release – Page 3**

foreign national charged with visa fraud under 18 U.S.C. § 1546(a) posed significant flight risk requiring maintenance of home detention and location monitoring conditions). Here, all three characteristics reinforce the need for structured, approval-based supervision rather than a curfew regime that permits broad, unsupervised movement.

    **C.**    **Conditions of Release and Prior Modification**

Following indictment, the Court ordered Defendants released subject to conditions designed to ensure compliance and protect the community, including home incarceration. Dkt. Nos. 40 & 42.  On June 23, 2025, after considering defendant Murshid's Motion to Modify Conditions of Release (Dkt. No. 53), the Court modified the conditions for both defendants by replacing home incarceration with home detention, while permitting enumerated exceptions for employment, religious services, medical needs, attorney visits, court obligations, and other essential activities approved by U.S. Pretrial Services ("Pretrial Services").  Dkt. Nos. 54 & 55.  In doing so, the Court calibrated supervision to balance liberty with accountability.

The Court also indicated that defendants could seek further modification after demonstrating a period of compliance, while retaining discretion to determine whether existing conditions should remain in place.  *Id*.  The Court did not suggest that compliance alone would entitle defendants to reduced supervision.  *Id.*

    **III.**    **LEGAL STANDARD**

Section 3142 of Title 18 of the United States Code (part of the Bail Reform Act, 18 U.S.C. § 3141 et seq.) prescribes the process for determining the conditions for release of a criminal defendant pending trial.  Subsection (b) of the statute authorizes the pretrial

release of a defendant subject to minimal conditions—that the defendant shall not commit a crime and shall provide a DNA sample.  If the judicial officer determines that release under subsection (b) "will not reasonably assure the appearance of the person as required or will endanger the safety or any other person or the community," subsection (c) authorizes pretrial release subject to "the least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(c).

To determine whether pretrial conditions will reasonably assure a defendant's appearance and the safety or any other person and the community, a judicial officer must take into account: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  § 3142(g).

The Court retains authority to amend conditions of release at any time. § 3142(c)(3).  Modification, however, is discretionary and requires a showing that existing conditions are no longer necessary to meet the statutory objectives of the Bail Reform Act.  *United States v. Ladd*, No. 3:18-CR-100-L, 2019 WL 1099068, at *3-*5 (N.D. Tex 2019) (Horan, M.J.)(internal citations omitted).  The Bail Reform Act does not provide for progressive relaxation of conditions based on compliance alone.  *See United States v. Villasenor*, No. 22-CR-342, 2023 WL 4109696, at *3 (N.D. Tex. June 21, 2023) (Ramirez, M.J.) (collecting cases).  Rather, it requires the Court to impose and maintain

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release – Page 5**

the least restrictive set of conditions that will reasonably assure appearance and protect the community throughout the pendency of the case.  18 U.S.C. §§ 3142(c), (g).

## IV.    ARGUMENT

### A.    Home Detention Remains Necessary to Reasonably Assure Community Safety and Appearance

Defendants present no new information material to their release conditions regarding flight or dangerousness.  Rather, the nature and circumstances of the offense, as well as the weight of the evidence against the defendants, counsel continuing both on home detention.  While the defendants' motions focus on flight risk, under the Bail Reform Act, "danger . . . to the safety of the community" includes the risk of harm through continued fraudulent conduct.  *See, e.g.*, *Muhammad*, 2025 WL 3553204 at *4; *Conley*, 2023 WL 4932089 at *4-5; *Exposito*, 2023 WL 2859113 at *8.

The charged offenses in this case involve an alleged large-scale, non-violent fraud scheme that is communications-based, document-driven, and capable of being carried out during ordinary business hours.  Dkt. No. 1.  The danger posed by release is not physical violence but continued economic harm and interference with lawful governmental processes.  Home detention mitigates that danger by restricting defendants to their residences except for discrete, pre-approved activities, thereby limiting unstructured access to clients, associates, records, and business infrastructure, which is the very access that facilitated the charged conduct.

A curfew would not provide the same protection.  By permitting broad, unsupervised movement during non-restricted hours, a curfew would restore the

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release –  Page 6**

conditions under which the alleged fraud occurred and would increase the risk of continued fraudulent activity. Home detention, by contrast, imposes a presumption of confinement that reduces opportunity for such conduct and allows Pretrial Services to exercise prospective control over departures from the residence.

The nature and circumstances of the charged offense, weight of the evidence against the defendants, and history and characteristics of the defendants also support home detention as necessary to address the risk of non-appearance. *See Dokku*, 2020 WL 2065633, at *6. Both defendants are Pakistani nationals, and the record developed at the detention proceedings reflects significant ties abroad and access to financial resources outside the United States. The evidence further showed that defendants have connections to individuals overseas and experience facilitating movement across borders.

These considerations bear directly on the appearance analysis under § 3142(g)(3). Home detention combined with location monitoring limits defendants' ability to engage in unmonitored meetings, financial arrangements, or coordination that could facilitate flight, while still permitting essential activities approved by the Court or Pretrial Services.

The Court already weighed these considerations when it imposed home detention with location monitoring and decided that such a condition was the least restrictive means of assuring defendants' appearance and the safety of the community from continued fraudulent conduct. Defendants' assertions about the inconvenience of the current conditions for their personal and professional lives should not change the Court's calculus.

B.       **Defendants' Curfew Proposal Improperly Conflates Distinct Supervision Regimes**

Defendants attempt to avoid this conclusion by arguing that curfew would provide equivalent supervision due to technical limitations presented by the Eastern District of Texas's RC Cellular monitoring.  Dkt. Nos. 80 & 82.  This argument was first advanced by defendant Murshid in his original motion to modify conditions of release, Dkt. No. 53; later adopted by defendant Nasir in his motion to modify, Dkt. No. 80; and is now re-urged by defendant Murshid in his renewed motion, Dkt. No. 82.  Both defendants misconstrue the law by conflating distinct supervision regimes into a single category based on perceived functional similarity.

The Bail Reform Act distinguishes between conditions that permit liberty subject to limits and conditions that presume confinement subject to narrow exceptions. *Compare* § 3142(c)(1)(B)(vii) (permitting court to impose curfew) *with* § 3142(c)(1)(B)(iv) (treating as distinct restrictions on "place of abode" and "travel"). Home detention falls into the latter category; a curfew falls into the former.  The difference is not the means by which compliance is monitored, but the scope of liberty the Court authorizes in the first instance.  Under home detention, departures from the residence are the exception and require justification and, where applicable, advance approval.  Under a curfew, daily freedom of movement is the norm.

By focusing on the mechanics of monitoring (RC cellular in the Eastern District vs. GPS in the Northern District), defendants ask the Court to treat these materially different conditions as interchangeable.  Dkt. Nos. 80 & 82.  Congress enumerated home

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release – Page 8**

detention as a distinct condition precisely because it imposes a higher level of control where the nature of the offense and the defendants' characteristics warrant it. *See* 18 U.S.C. § 3142(c)(1)(B).

The Court has already applied this statutory framework by selecting home detention rather than a curfew. Dkt. Nos. 54 & 55. Defendants' curfew proposal would undermine that determination by reducing supervision without any intervening change in circumstances.

### C.   Compliance Does Not Constitute a Material Change in Circumstances

Defendants also rely on assertions of compliance to support modification. Dkts. 80 & 82. The government does not concede that either defendant has complied with all conditions imposed by the Court. But even assuming arguendo that defendants could establish compliance, that showing alone does not constitute a material change in circumstances warranting modification.

It is well established in this District that compliance with conditions of release is not an exceptional circumstance. Rather, it is the minimum expectation of every defendant released pending trial. *See Villasenor*, 2023 WL 4109696 at *3. The Bail Reform Act does not provide that conditions should be relaxed simply because a defendant has done what the Court ordered him to do. *Id.* Rather, modification is appropriate only where new information or changed circumstances materially alter the Court's original assessment of risk. *See Ladd*, 2019 WL 1099068, at *3 (quoting *United States v. Phua*, No. 2:14-cr-00249-APG-PAL, 2015 WL 127715, at *1 (D. Nev. Jan. 8, 2015)).

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release –   Page 9**

Defendants' motions identify no new facts bearing on the risks that led the Court to impose home detention in the first instance. Dkt. Nos. 80 & 82. Neither contends that the nature of the charged conduct has changed, that their access to financial resources has diminished, or that their ties to foreign contacts have weakened. *Id.* Nor do they identify any development that would reduce the risk of continued economic harm or flight. *Id.* Instead, defendants ask the Court to treat compliance as a substitute for changed circumstances, a position unsupported by the Bail Reform Act or applicable case law.

Even if defendants had demonstrated perfect compliance, that fact would merely confirm that the existing conditions are functioning as intended. It would not establish that lesser conditions would be equally effective. The relevant inquiry is not whether defendants can comply with restrictions, but whether the Court can reasonably assure appearance and community safety under a less restrictive supervision regime. Defendants make no such showing.

### D.      **Employment and Family Considerations Do Not Justify Modification**

Finally, defendants invoke employment and family considerations as grounds for expanded liberty. Dkt. Nos. 80 & 82. Defendant Nasir contends that home detention prevents him from meeting vendors to launch a new online retail business, Dkt. No. 80, while defendant Murshid asserts that he has been unable to obtain approval from Pretrial Services to attend job interviews and points to his responsibilities as a parent of an infant child. Dkt. No. 82.

The Bail Reform Act does not entitle defendants to pursue employment or conduct business without supervision. It requires conditions that reasonably assure appearance

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release – Page 10**

and protect the safety of the community.  18 U.S.C. § 3142(c).  Where, as here, defendants are charged with sophisticated, business-facilitated fraud, it is appropriate for the Court to require advance approval for employment-related activities to prevent additional community harm.  *Conley*, 2023 WL 4932089, at *4-5.  The Court's order does not prohibit work, interviews, or legitimate business activity; it instead requires transparency and oversight so that Pretrial Services can evaluate who defendants are meeting with, for what purpose, and whether those meetings are consistent with the objectives of pretrial supervision.

Defendant Nasir's argument underscores, rather than undermines, the need for home detention with enumerated exceptions.  His request is not merely to work, but to meet freely and unsupervised with vendors to start a new business.  Dkt. No. 80.  Given the nature of the charges against him, it is reasonable for the Court to require such meetings be disclosed and approved in advance rather than allowing the defendants to conduct unsupervised business activity during the pendency of this case.  A curfew would eliminate the oversight the Court originally deemed necessary to protect the safety of the community from economic harm by defendants.

Murshid's claim that he has been unable to obtain approval for job interviews likewise does not warrant modification.  The approval requirement is a feature of home detention, not a flaw.  It ensures accountability and allows Pretrial Services to assess whether proposed activities are legitimate and appropriate to protect the community from economic harm.  The Bail Reform Act does not guarantee defendants immediate or

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release – Page 11**

unconditional access to employment when such opportunities would undermine supervision tailored to the charged conduct.

Nor does either defendant's family circumstances alter this analysis. While the government does not minimize the difficulty of caring for an infant child under restrictive conditions, such hardships are common consequences of pretrial supervision and were necessarily contemplated when the Court modified the conditions from home incarceration to home detention. Specifically, the fact that Mr. Murshid had an infant son was disclosed and was part of the record at the time of the detention hearing. Family responsibilities do not override the Bail Reform Act's mandate to ensure appearance and community safety, particularly where the Court has already balanced those considerations and imposed a measured, structured release regime. In short, defendants seek to reframe routine and foreseeable consequences of home detention as grounds for relaxation of supervision. The Bail Reform Act does not support that result.

### V.    CONCLUSION

For the foregoing reasons, defendants have failed to identify any new information or changed circumstances that would warrant modification of their conditions of release. The nature of the charged conduct, the strength of the evidence, defendants' foreign ties and access to resources, and the ongoing risk of economic harm all continue to support home detention with location monitoring as the least restrictive means of reasonably assuring appearance and protecting the community. Thus, the government requests,

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release – Page 12**

respectfully, that the Court deny defendants' motions (Dkt. Nos. 80 & 82) in their entirety.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

RYAN RAYBOULD
UNITED STATES ATTORNEY

*s/ Edward L. Hocter*
EDWARD HOCTER
Assistant United States Attorney
Texas Bar No. 24121668

JONGWOO CHUNG
Assistant United States Attorney
North Carolina Bar No. 52070

NICOLE DANA
Assistant United States Attorney
Texas State Bar No. 24062268

1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone: (214) 659-8600
Facsimile: (214) 659-8812
Emails: ted.hocter@usdoj.gov;
jongwoo.chung@usdoj.gov;
nicole.dana@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on January 22, 2026, I served a copy of the foregoing Government's Omnibus Response in Opposition to Defendants' Motions to Modify Conditions of Release by means of the Electronic Case Filing System of the United States District Court for the Northern District of Texas, which will effect service on all counsel of record.

*s/ Edward L. Hocter*
EDWARD HOCTER

**Government's Response in Opposition to Defendant's**
**Motion to Modify Conditions of Pretrial Release – Page 13**